McLAURIN *v.* OKLAHOMA STATE REGENTS FOR
HIGHER EDUCATION ᴇᴛ ᴀʟ.

No. 34. Argued April 3–4, 1950.—Decided June 5, 1950.

*Robert L. Carter* and *Amos T. Hall* argued the cause
for appellant. With them on the brief were *Thurgood*

*Marshall* and *Frank D. Reeves.* *Marian W. Perry* and *Franklin H. Williams* were also of counsel.

*Fred Hansen,* First Assistant Attorney General of Oklahoma, argued the cause for appellees. With him on the brief was *Mac Q. Williamson,* Attorney General.

Briefs of *amici curiae,* supporting appellant, were filed by *Solicitor General Perlman* and *Philip Elman* for the United States; *Paul G. Annes* for the American Federation of Teachers; *Phineas Indritz* for the American Veterans Committee, Inc.; *Arthur J. Goldberg* for the Congress of Industrial Organizations; *Edward J. Ennis* and *Saburo Kido* for the Japanese American Citizens League; and *Arthur Garfield Hays* and *Eugene Nickerson* for the American Civil Liberties Union.

MR. CHIEF JUSTICE VINSON delivered the opinion of the Court.

In this case, we are faced with the question whether a state may, after admitting a student to graduate instruction in its state university, afford him different treatment from other students solely because of his race. We decide only this issue; see *Sweatt* v. *Painter, ante,* p. 629.

Appellant is a Negro citizen of Oklahoma. Possessing a Master's Degree, he applied for admission to the University of Oklahoma in order to pursue studies and courses leading to a Doctorate in Education. At that time, his application was denied, solely because of his race. The school authorities were required to exclude him by the Oklahoma statutes, 70 Okla. Stat. (1941) §§ 455, 456, 457, which made it a misdemeanor to maintain or operate, teach or attend a school at which both whites and Negroes are enrolled or taught. Appellant filed a complaint requesting injunctive relief, alleging that the action of the school authorities and the statutes upon which their action was based were unconstitutional and deprived him

of the equal protection of the laws. Citing our decisions in *Missouri ex rel. Gaines* v. *Canada,* 305 U. S. 337 (1938), and *Sipuel* v. *Board of Regents,* 332 U. S. 631 (1948), a statutory three-judge District Court held that the State had a Constitutional duty to provide him with the education he sought as soon as it provided that education for applicants of any other group. It further held that to the extent the Oklahoma statutes denied him admission they were unconstitutional and void. On the assumption, however, that the State would follow the constitutional mandate, the court refused to grant the injunction, retaining jurisdiction of the cause with full power to issue any necessary and proper orders to secure McLaurin the equal protection of the laws. 87 F. Supp. 526.

Following this decision, the Oklahoma legislature amended these statutes to permit the admission of Negroes to institutions of higher learning attended by white students, in cases where such institutions offered courses not available in the Negro schools. The amendment provided, however, that in such cases the program of instruction "shall be given at such colleges or institutions of higher education upon a segregated basis." [1] Appel-

---

[1] The amendment adds the following proviso to each of the sections relating to mixed schools: "Provided, that the provisions of this Section shall not apply to programs of instruction leading to a particular degree given at State owned or operated colleges or institutions of higher education of this State established for and/or used by the white race, where such programs of instruction leading to a particular degree are not given at colleges or institutions of higher education of this State established for and/or used by the colored race; provided further, that said programs of instruction leading to a particular degree shall be given at such colleges or institutions of higher education upon a segregated basis." 70 Okla. Stat. Ann. (1950) §§ 455, 456, 457. Segregated basis is defined as "classroom instruction given in separate classrooms, or at separate times." *Id.* § 455.

lant was thereupon admitted to the University of Oklahoma Graduate School. In apparent conformity with the amendment, his admission was made subject to "such rules and regulations as to segregation as the President of the University shall consider to afford to Mr. G. W. McLaurin substantially equal educational opportunities as are afforded to other persons seeking the same education in the Graduate College," a condition which does not appear to have been withdrawn. Thus he was required to sit apart at a designated desk in an anteroom adjoining the classroom; to sit at a designated desk on the mezzanine floor of the library, but not to use the desks in the regular reading room; and to sit at a designated table and to eat at a different time from the other students in the school cafeteria.

To remove these conditions, appellant filed a motion to modify the order and judgment of the District Court. That court held that such treatment did not violate the provisions of the Fourteenth Amendment and denied the motion. 87 F. Supp. 528. This appeal followed.

In the interval between the decision of the court below and the hearing in this Court, the treatment afforded appellant was altered. For some time, the section of the classroom in which appellant sat was surrounded by a rail on which there was a sign stating, "Reserved For Colored," but these have been removed. He is now assigned to a seat in the classroom in a row specified for colored students; he is assigned to a table in the library on the main floor; and he is permitted to eat at the same time in the cafeteria as other students, although here again he is assigned to a special table.

It is said that the separations imposed by the State in this case are in form merely nominal. McLaurin uses the same classroom, library and cafeteria as students of other races; there is no indication that the seats to which he is assigned in these rooms have any disadvantage

of location. He may wait in line in the cafeteria and there stand and talk with his fellow students, but while he eats he must remain apart.

These restrictions were obviously imposed in order to comply, as nearly as could be, with the statutory requirements of Oklahoma. But they signify that the State, in administering the facilities it affords for professional and graduate study, sets McLaurin apart from the other students. The result is that appellant is handicapped in his pursuit of effective graduate instruction. Such restrictions impair and inhibit his ability to study, to engage in discussions and exchange views with other students, and, in general, to learn his profession.

Our society grows increasingly complex, and our need for trained leaders increases correspondingly. Appellant's case represents, perhaps, the epitome of that need, for he is attempting to obtain an advanced degree in education, to become, by definition, a leader and trainer of others. Those who will come under his guidance and influence must be directly affected by the education he receives. Their own education and development will necessarily suffer to the extent that his training is unequal to that of his classmates. State-imposed restrictions which produce such inequalities cannot be sustained.

It may be argued that appellant will be in no better position when these restrictions are removed, for he may still be set apart by his fellow students. This we think irrelevant. There is a vast difference—a Constitutional difference—between restrictions imposed by the state which prohibit the intellectual commingling of students, and the refusal of individuals to commingle where the state presents no such bar. *Shelley* v. *Kraemer,* 334 U. S. 1, 13–14 (1948). The removal of the state restrictions will not necessarily abate individual and group predilections, prejudices and choices. But at the very least, the state will not be depriving appellant of the opportunity

to secure acceptance by his fellow students on his own merits.

We conclude that the conditions under which this appellant is required to receive his education deprive him of his personal and present right to the equal protection of the laws. See *Sweatt* v. *Painter, ante,* p. 629. We hold that under these circumstances the Fourteenth Amendment precludes differences in treatment by the state based upon race. Appellant, having been admitted to a state-supported graduate school, must receive the same treatment at the hands of the state as students of other races. The judgment is

*Reversed.*