## WINBORNE et al. v. TAYLOR et al.

### No. 6383.

United States Court of Appeals Fourth Circuit.

Argued March 7, 1952.

Decided April 1, 1952.

P. H. Bell, Charlotte, N. C., and M. Hugh Thompson, Durham, N. C. (Charles V. Bell, Charlotte, N. C., on brief), for appellants.

Ralph Moody, Asst. Atty. Gen. of North Carolina, (Harry McMullan, Atty. Gen. of North Carolina, on brief), for appellees North Carolina State Board of Education, H. P. Taylor et al.

Carl Bailey, Plymouth, N. C. (Z. V. Norman, Plymouth, N. C., on brief), for appellees Washington County Board of Education et al.

William Davis Butts, Newport News, Va., for intervenors, appellees Merelene Anthony et al.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

DOBIE, Circuit Judge.

Plaintiff-appellants are Negro children attending the public schools of Washington County, North Carolina, and their parents and guardians. They instituted, in the District Court of the United States for the Eastern District of North Carolina, a civil action seeking a declaratory judgment and a permanent injunction on the ground that the defendants had unconstitutionally discriminated against them by denying them educational facilities equal to those furnished white children similarly situated. This denial was asserted to be in contravention of the Fourteenth Amendment to the Constitution of the United States and the Constitution and laws of the State of North Carolina.

When the case was heard before the District Court, the defendants filed an admission to the effect that existing educational facilities for the colored race were not equal to those provided for the white race. The defendants showed, however, that a program for improving the schools of the county was being undertaken and that the first step in the program was the consolidation of the three Negro high schools with the building of a modern high school building centrally located at Roper and with the provision of adequate .bus service for high school students residing elsewhere in the county to bring them to this school. It was shown that this consolidation and building were in accord with modern educational standards and would furnish better school facilities for the Negro children than for white children and that a similar consolidation for the white high schools was contemplated as soon as funds should be available for that purpose. The case was tried by the District Court

on the question "whether the removal of the Negro Plymouth High School to the town of Roper, as a part of the plan of consolidation of Negro schools in said county, would, of itself, be an act of discrimination against the Negroes." After hearing extensive evidence by the plaintiffs, defendants, and the intervenors, a group of Negroes who favor the consolidation plan, the District Court made findings of fact, conclusions of law, and entered final judgment declaring that execution of the proposed plan of consolidation would not constitute *discrimination against the Negro school children of Washington County.* From this judgment plaintiffs have appealed to us, alleging in substance that the *proposed consolidation does not afford them* substantially equal facilities consistent with the mandate of the Fourteenth Amendment.

█ Under Article IX, Section 2 of the North Carolina Constitution and Chapter 115, Section 2 of the General Statutes of North Carolina, the. segregation of the white and colored races is required in the public schools, although any racial discrimination therein is expressly prohibited. The validity of these provisions is not contested, nor is the well-established principle under the Fourteenth Amendment that a segregated educational system must provide substantially equal treatment for each group, regardless of race or color. State of Missouri ex rel. Gaines v. Canada, 305 U. S. 337, 59 S.Ct. 232, 83 L.Ed. 208; Sipuel v. Board of Regents, 332 U.S. 631, 68 S. Ct. 299, 92 L.Ed. 247; Sweatt v. Painter, 339 U.S. 629, 70 S.Ct. 848, 94 L.Ed. 1114; McLaurin v. Oklahoma State Regents, 339 U.S. 637, 70 S.Ct. 851, 94 L.Ed. 1149. We need simply to test the proposed consolidation plan in Washington County by this measure.

In Washington County at present there are three high schools for white and three for Negro pupils, one for each race being located at the towns of Plymouth, Roper and Creswell. The three Negro schools are admittedly inferior in all aspects. The proposed plan of the defendants would consolidate the two Negro schools at Plymouth and Creswell with the one at Roper,

the latter being located in the center of the County. Upon the completion of the consolidated Negro high schools at Roper, the Negro high schools at Plymouth and Creswell would be discontinued.

The District Court found, and the plaintiffs do not seem to contest, that "the proposed Negro high school consolidation is a progressive forward step beyond what has been presently provided or proposed for the white high schools. If consummated, the consolidated Negro high school will have more modern, suitable, and commodious buildings, better facilities, a larger faculty, trained in a greater number of fields of instruction, and a broader curriculum than will any white high school in the County. A campus containing more than twenty acres has been provided for the consolidated high school, affording space for more extra-curricular activities than at * * * any of the white high schools. It will, when constructed and established substantially as presently proposed, be in all respects equal, and in some respects superior, to any white high school in the County."

The plaintiffs, however, say such a comparison cannot be made. They contend that the consolidation plan "would be discrimination against the Negro high school children of Plymouth and Creswell because they are required to avail themselves of high school facilities outside Plymouth and Creswell, while white high school children of Plymouth and Creswell can avail themselves of high school facilities at Plymouth and Creswell, respectively." In other words, the distance some Negro students will have to travel is the sole objection. Plymouth is eight miles from Roper, Creswell is sixteen. This travel distance, the District Court found, "is not unreasonable or burdensome, but is a part of the adequate school facilities of the County and is normal and usual. White students are now being transported distances as great." And the District Court concluded that "any inconvenience experienced by any Negro students will not be greater than that now experienced by white students, will be more than compensated for by improved and

superior educational advantages, and will not constitute discrimination against them." After a careful consideration of the record, sufficient evidence does not appear to justify our setting aside this finding as erroneous. The drawing of fine lines and minute differences, in the face of manifest substantial equality, is a burden neither the law requires nor reason suggests.

There are presently enrolled in the Negro high schools of Washington County 272 pupils, of which 129 are in Plymouth, 76 in Roper and 67 in Creswell. It is an accepted fact that a modern high school cannot function with maximum efficiency with such small enrollments. And this record is replete with evidence of the many and obvious educational advantages of a consolidated Negro high school at Roper over the existing separate Negro high schools at Plymouth, Roper and Creswell.

The plaintiffs press upon us a comparison with our recent decision in Corbin v. County School Board of Pulaski County, 4 Cir., 177 F.2d 924, where we held there was evidence of discrimination against Negro pupils in Pulaski County, Virginia, considering as one of the discriminatory elements the inadequate transportation facilities and longer travel distances imposed upon them. But the analogy must fail of its purpose, for the same inequalities do not present themselves on the Washington County scene. The travel distance is not a strenuous round trip of 60 miles per day as in Pulaski County, but in all instances half that amount or less; the transportation facilities proposed are entirely adequate, and above all, the new high school itself will be in all respects equal or superior to the educational opportunities offered white students of the County. In the Corbin case, too, the school which the Negro pupils were required to attend, was in another County. In the light of these differences, we cannot see that our decision in the Corbin case is binding here.

We do not gainsay the substantial equality requirement of the Fourteenth Amendment nor our readiness, in cases of noncompliance, to strike down the discrimina-

tory treatment. But a consideration of all the evidence here compels our acceptance of a finding of no discrimination. The judgment of the District Court is affirmed.

Affirmed.