## HARRIS et al. v. CITY OF DAYTONA BEACH et al.

### Civ. 1680–J.

United States District Court
S. D. Florida, Jacksonville Division.

June 5, 1952.

Declaratory Judgment and Final Decree
June 23, 1952.

H. E. Hill, Daytona Beach, Fla., G. E. Graves, Jr., Miami, Fla., for plaintiffs.

Raymond & Wilson, Daytona Beach, Fla., Walter Shelley, Daytona Beach, Fla., for defendants.

SIMPSON, District Judge.

Both plaintiffs and defendants have argued and submitted for decision their respective motions for summary judgment, under Rule 56, Federal Rules of Civil Procedure, 28 U.S.C.A. The pertinent facts are embodied in a stipulation of agreed facts, entered into by the parties and filed before the Court July 19, 1951. This stipulation is adopted by the Court as its Findings of Fact and may be so incorporated by reference in the judgment to be rendered hereunder.

The plaintiffs are Negro citizens and residents of the State of Florida, and of the City of Daytona Beach, Florida, a municipal corporation organized and existing under the laws of Florida. The City, by municipal bond issue built, and through an Advisory Board (also defendant) and white manager, maintains and operates, a municipal auditorium, Peabody Auditorium. It cost, in public funds, $808,182.28. This is located on the Peninsula side of the Halifax River, which divides the town. All residents of this side are white persons.

Exclusively for members of the white race, numerous entertainments, recitals, stage plays, musical and vocal concerts and the like have been presented in this auditorium by the City through its Advisory Board and manager. Upon payment of the admission charges, members of the general public, so long as they are white persons, have thus been privileged to see and be entertained by artists, entertainers and musical and dramatic organizations of national and international standing and reputation.

On few occasions, the Peabody Auditorium has been rented to civic clubs, or fraternal orders who have sponsored somewhat similar shows, but usually employed "local talent."

Also from public funds (raised by the same bond issue), the City built at an expense of $72,734.55, maintains, and operates through a similar Advisory Board composed of Negroes, a much smaller and less luxurious building called the Negro Recreational Center. This is located on Cypress Street, in a Negro section of town, on the Mainland side of the Halifax River. The permanent population of Daytona Beach is 30,000, about three-fourths white, and one-fourth Negro.

The Negro Recreational Center is used for a gymnasium, for basketball games and

the like, and may be used as an auditorium, seating about 1400, by use of temporary seats. The Peabody Auditorium is built for auditorium purposes only, and seats 2560 in permanent seats. A few attempts have been made to exhibit nationally known Negro artists and organizations in performances at the Negro Recreational Center (exclusively for Negroes), but these have failed financially.

Plaintiffs, on behalf of themselves, and others similarly situated, seek appropriate relief by declaratory judgment and permanent injunction, to compel the City of Daytona Beach, its officials and its Peabody Auditorium Advisory Board, and manager, to admit them to performances at the Auditorium when the general public is admitted. They assert their rights, under the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States, as individuals, upon payment of the required admission charges, to occupy seats and enjoy such performances as they choose to attend.

The defendants point to the Negro Recreational Center provided for Negroes as a "substantially equal" facility, and assert that the City's policy is one of segregation of the races, with an auditorium for each race based on the need and number thereof.

But does this meet and answer the real question? Do Negro citizens and white citizens enjoy equality in fact as to the use and enjoyment of these publicly owned facilities? Actually, under existing conditions, if one of these Negro plaintiffs wants to see and hear Nelson Eddy, or Lauritz Melchior sing, or the United States Marine Band play, or the Virginia Barter Theatre Players perform, they must go to another state to do so. Yet, right in their own city—a governmental arm of the State of which they are citizens—that City, of which they are also citizens, sponsors public performances by these and similar artists. From these performances they are excluded solely by reason of their color. It seems to me that the clear answer is that they do not enjoy *equality in fact* in this particular with white citizens.

Their personal and individual right, as citizens, irrespective of color, is to attend such performances so long as seats are available, the required admission is paid, and they conduct themselves properly and lawfully as individuals.

The Supreme Court of the United States said in State of Missouri, ex rel. Gaines v. Canada, 305 U.S. 337, 59 S.Ct. 232, 237, 83 L.Ed. 208:

"It was *as an individual* that he was entitled to the equal protection of the laws, and the State was bound to furnish him within its borders facilities for legal education substantially equal to those which the State there afforded for persons of the white race, *whether or not other negroes sought the same opportunity.*"

My opinion is that this principle is controlling in the case at bar, along with Sweatt v. Painter, 339 U.S. 629, 70 S.Ct. 848, 94 L.Ed. 1114, and McLaurin v. Oklahoma State Regents, 339 U.S. 637, 70 S.Ct. 851, 94 L.Ed. 1149.

The right of these plaintiffs to attend performances of artistic and cultural value must not be made contingent on other Negroes seeking the same right and opportunity. It may never come to pass. It may never be feasible or financially possible to present similar or substantially equal performances in the Negro Recreational Center. As citizens of this Republic, and of one of its component States guaranteed "equal protection of the laws" these plaintiffs cannot be required to await the acquisition of culture and the price of a ticket by sufficient numbers of their race to make such performances a reality.

While the plaintiffs have brought their suit as citizens, and are referred to in this opinion as citizens, it should be pointed out for clarity that the "Equal Protection of Laws" clause of the Fourteenth Amendment (unlike the "Privileges and Immunities" clause) is not limited to citizens but protects "any person." The injunctive portion of the decree to be entered will, therefore, enjoin discrimination in the admission to the auditorium against persons of the colored race.

It is strenuously urged by able counsel for the City that this is not a school case,

and that some different principle should be found and applied. To me it seems clear that the governing principle of the individual right to equality in fact is the same. The enjoyment of artistic, cultural and entertainment facilities must rest on the same basis as the enjoyment of recreational facilities. The Supreme Court of the United States in the recent Hialeah case [1] and our Court of Appeals for the Fifth Circuit in the Houston case [2] recently decided, apply the principle to golf courses, and there are numerous swimming pool cases in the same vein, including the St. Louis case [3] and the Montgomery case [4]. The guiding principle of equality in fact for the white and Negro races as the only legal basis for separation and segregation appears in these and a number of other similar decisions. My understanding does not admit of any other application to the case before me of the cited precedents, which must be regarded and followed as the law of the land.

Plaintiffs' motion for summary judgment will accordingly be granted, and that of the defendants denied. The terms of an appropriate final judgment granting the relief sought by plaintiffs, may be settled upon notice.

### Declaratory Judgment and Final Decree

This cause was argued and submitted upon the plaintiffs' motion for summary judgment under Rule 56 Federal Rules of Civil Procedure (filed June 23, 1951), the defendants' motion for summary judgment under Rule 56 Federal Rules of Civil Procedure (filed December 20, 1950), upon the plaintiffs' amended complaint (filed November 13, 1950), upon the defendants' answer thereto (filed May 5, 1950 to the original complaint and treated by Court and counsel as applicable to said amended complaint) upon the stipulation of facts (filed by the respective parties July 19, 1951) and upon the entire file herein, and the Court having filed its memorandum opinion herein on June 5, 1952, indicating the relief to be granted in and by this judgment and decree, it is upon consideration

Ordered and Adjudged:

1. This Court has jurisdiction of this cause, and of the parties hereto under Title 8 U.S.C.A. §§ 41 and 43, Title 28 U.S.C.A. §§ 1343 and 2201, and under the Fourteenth Amendment to the Constitution of the United States of America.

2. This action is a class suit brought by the plaintiffs for themselves and other colored persons similarly situated and an actual controversy exists between the plaintiffs and the defendants so as to entitle plaintiffs to a declaratory judgment and other relief under Title 28 U.S.C.A. § 2201.

3. The effect of the stipulation of facts filed herein by the respective parties is to resolve all disputed issues of fact under the pleadings herein and there is no genuine issue as to any material fact remaining before the Court. Such stipulation of facts (filed July 19, 1951) is incorporated by reference in this judgment and decree and is adopted as the Court's findings of fact.

4. The plaintiffs' motion for summary judgment (filed July 23, 1951) is hereby granted.

5. The defendants' motion for summary judgment (filed December 20, 1950) is hereby denied.

6. The action and practice of the City of Daytona Beach and the Peabody Auditorium Advisory Board of excluding colored persons from attending affairs and entertainments in the Peabody Auditorium solely because of their color, is found and declared to be arbitrary, capricious, discriminatory, and contrary to the Constitution and Laws of the United States of America and denies to such persons the equal protection of the laws under the Fourteenth Amendment to the Constitution of the United States.

1. Rice v. Arnold, 340 U.S. 848, 71 S.Ct. 77, 95 L.Ed. 621, reversing Supreme Court of Fla., 45 So.2d 195.

2. Beal v. Holcombe, 5 Cir., 193 F.2d 384.

3. Draper v. City of St. Louis, D.C., 92 F.Supp. 546, appeal dismissed 8 Cir., 186 F.2d 307.

4. Lawrence v. Hancock, D.C., 76 F.Supp. 1004, not appealed.

7. Affairs and entertainments sponsored and held by private organizations such as the Civic Music Association, the Lion's Club, and the like, with the right to select their own members and their own audiences, who lease the said Peabody Auditorium from the Advisory Board from time to time for the purpose of such entertainments, and have done so from time to time in the past, are outside the issues presented in this suit and are not within the scope of the permanent injunction contained in Paragraph 8 of this judgment and decree.

8. The defendants, the City of Daytona Beach, Florida, and the Peabody Auditorium Advisory Board, and any agency of either of said defendants, now existing or hereafter created, are hereby permanently enjoined and restrained from excluding colored persons from any entertainment, affair, recital, stage show, concert or other performance given in the Peabody Auditorium to which the public generally is invited or admitted.

9. The defendants are allowed a reasonable time and opportunity within which to promptly prepare and put into effect suitable administrative regulations and to make necessary structural changes and additions to said building and the arrangement thereof so as to provide equal and separate accommodations, and equal privileges and opportunities in the use of said Peabody Auditorium to the white and colored races and individual members thereof.

10. Jurisdiction of the parties and the subject matter of this suit is expressly retained for the purpose of enforcing the injunctive portion of this decree.

11. The plaintiffs, Joe Harris, J. H. Dickerson, Herbert Thompson and J. A. Waldon, shall have and recover of and from the defendant, The City of Daytona Beach, a Municipal Corporation, their costs expended in this suit and herein taxed in the sum of $59.80, for which let execution issue.