James THOMAS, and all other persons
similarly situated, Plaintiffs,

v.

Ricardo CLARKE, and Donald J. Omodt,
individually and as Hennepin County
Sheriff, Defendants,

and

State of Minnesota, Intervenor.

No. 4–71–Civ. 14.

United States District Court,
D. Minnesota,
Fourth Division.

Nov. 26, 1971.

Luther A. Granquist, Legal Aid Society, Inc., Minneapolis, Minn., for plaintiffs.

Douglas McClellan, Asst. Hennepin Co. Atty., Minneapolis, Minn., for defendant Donald J. Omodt.

Warren Spannaus, Atty. Gen. by John M. Mason, St. Paul, Minn., for State of Minnesota.

Before HEANEY, Circuit Judge, and DEVITT and LARSON, District Judges.

## MEMORANDUM ORDER

LARSON, District Judge.

### THE STATUTE

Chapter 565 Minn.Stats., the claim and delivery statute, provides that any person who has instituted an action for the recovery of personal property may obtain immediate possession of it at the time of issuing of the summons or at any time before answer. All that is necessary for a replevin action plaintiff to secure such personalty is for him to present the sheriff with an affidavit to the effect that he has a right to the property, accompanied by a bond in the amount of at least double what he alleges the value of the property to be.

If the sheriff approves the surety on the bond, it is then his duty to take the property into his possession. He is authorized to forcibly enter premises, if such is necessary, in order to secure its return. The statute also obligates the sheriff to serve the affidavit and bond upon the defendant. However, there is no requirement that the defendant be served prior to the seizure.

The person from whom the property is seized may only regain possession by presenting a comparable bond, together with a written request for its return, within three days of the seizure. If no such action is taken, the sheriff is required to deliver the replevied property to the plaintiff.

At no point does the statute provide for any hearing, either as to possible defenses or as to the value of the property seized. Thus the seizure may be effectuated without any judicial determination of the plaintiff's right to the property. Similarly, the plaintiff is able to make a unilateral determination

as to the value of the property. He thus is able to set the amount of the bond which both he and the defendant must secure.

## THE FACTS

Plaintiff purchased an automobile from Patrick O'Brien in December of 1970. Prior to that time O'Brien had attempted to sell the car to defendant Clarke. Upon learning of the sale to plaintiff, Clarke, claiming to be the owner of the car, initiated a replevin action against both Thomas and O'Brien. On January 14, 1971, as a result of this action and pursuant to Chapter 565, the car was taken without notice to the plaintiff from in front of his house by agents of the Hennepin County Sheriff.

On January 19 a temporary restraining order was entered by United States District Court Judge Earl R. Larson. It restrained the sheriff from surrendering the automobile to Clarke, as would have been required by the claim and delivery statute. On January 21 O'Brien was able to secure a defendant's replevin (redelivery) bond. O'Brien filed this bond with the sheriff on January 22. Thereafter on the same day he consented to have the car released to the plaintiff. Thomas, after one week, was thus able to regain possession of his automobile.

On May 3 the replevin action in State court was dismissed. O'Brien agreed to pay Clarke for his loss; Clarke released O'Brien from any personal claims and released any property claims he might have had in the car; and Clarke gave a bill of sale to Thomas.

Prior to that time plaintiff requested the convening of a three judge court. He asserts that this is a class action, and as the representative of the class seeks to have chapter 565 declared un-constitutional. His attack is three pronged. First, he contends that the statute violates the Due Process Clause of the Fourteenth Amendment by providing for the taking of property without prior notice and hearing. Secondly, he maintains that the seizure without a warrant is violative of his rights as secured by the Fourth and Fourteenth Amendments. Finally, Thomas urges that the claim and delivery statute violates the Fourteenth Amendment in that it discriminates against those whose financial condition makes it impossible for them to secure a redelivery bond.

Defendant, whose position has been primarily argued by amici curiae, resists all three constitutional attacks.[1] However, the primary defense is not on the merits. Instead, the amici strongly aver that this is not a proper class action. Moreover, they assert that the case is moot since there is no case or controversy due to the settlement of the replevin action in State court.

## CLASS ACTION

██ Whether this is a proper class action is relevant to later considerations of mootness. To be maintainable, a class action must meet all of the requirements of Rule 23(a) and also come within one of the subsections of 23(b). Eisen v. Carlisle & Jacquelin, 391 F.2d 555 (2nd Cir. 1968); Contract Buyers League v. F. & F. Investment, 48 F.R.D. 7 (N.D.Ill.1969). However, before considering the Rule 23 criteria, a preliminary determination that the class is capable of definition must be made. Dolgow v. Anderson, 43 F.R.D. 472, 491 (E.D.N.Y.1968).

### 1. *Definition of Class.*

The amici strongly assert that the class which plaintiff claims to represent

---

1. Amici are many of the financial concerns in the State who make frequent use of the claim and delivery statute as a method for protecting themselves from those who default on installment credit arrangements. They include the Minnesota Consumer Finance Conference, General Motors Acceptance Corporation, Ford Motor Credit Company, C.I.T. Financial Corporation, Chrysler Credit Corporation, Minnesota Bankers Association, and the National Cash Register Corporation.

is not capable of precise enough definition to allow this suit to continue as a class action. The class as originally defined by plaintiff was "all those persons who have personal property in Hennepin County of the State of Minnesota which personal property is subject to summary seizure without notice or hearing . . . pursuant to chapter 565 of the Minnesota Statutes." This, amici claim, would include all persons in Hennepin County.

Plaintiff has since sought to refine his definition of the class. To do this, he seeks to limit the class to those whose personal property is presently subject to or threatened by seizure under chapter 565. He contends that this includes two groups of people: (1) those whose property has been seized by the sheriff since this action was instituted, and (2) those whose property is presently under the threat of seizure pursuant to the claim and delivery statute, such as those in arrears on installment sales contracts.

■■■ Clearly, the members of the second group which Thomas would include in this class are not proper plaintiffs. In order to be a member of a class it is necessary that each individual have standing to bring the suit in his own right. Since no one in the second group has yet been affected by action of the statute, none of them has a valid claim of his own. Merely assembling a group of people with similar interests does not give this Court jurisdiction. The group can have no more rights than its individual members had on their own. Pacific Inter-Club Yacht Association v. Morris, 197 F.Supp. 218 (N.D. Cal.1960).

■■■ On the other hand, the members of the first group whom Thomas asserts compose the class do appear to be proper plaintiffs. Anyone whose property has been actually seized has a right to bring an action similar to this on his own. Moreover, these persons are readily identifiable. It is easy to tell if any person is either in or out of the class. All that is necessary is a determination of when his property was seized; if seizure occurred after this action was filed, he is a member of the class. Since it is possible to ascertain if someone is in or out of the class, the class is capable of precise enough definition to allow the suit to be pursued as a class action if the requirements of Rule 23 are met. Chaffee v. Johnson, 229 F.Supp. 445 (S. D.Miss.1964); Giordano v. Radio Corporation of America, 183 F.2d 558 (3rd Cir. 1950).

■■■ The fact that plaintiff's definition of the class needed modification does not require dismissal of the class action. Dolgow v. Anderson, *supra*. A court can, in its discretion under the Rule, define a class in a manner which will allow utilization of the class action procedure. Additionally, the trend is to interpret revised Rule 23 broadly so that in close cases decisions have been in favor of class actions. Esplin v. Hirschi, 402 F.2d 94 (10th Cir. 1968); Eisen v. Carlisle & Jacquelin, *supra;* Contract Buyers League v. F. & F. Investment, *supra*; Dolgow v. Anderson, *supra;* Gerstle v. Continental Airlines, Inc., 50 F.R.D. 213 (D.C.Colo.1970). Thus we limit this class to those persons who have had their property seized since this action was commenced. Such a class is capable of clear definition.

### 2. *Numerosity.*

■■■ With the class so defined, the inquiry must turn to a determination of whether the plaintiff's action is a proper one under Rule 23. There are two general prerequisites for a class action. These are: (1) that the persons constituting the class are so numerous that joinder of all of them would be impractical, and (2) that the named plaintiff's interest is such that he will insure the adequate representation of all members of the class. Wright, "Handbook of the Law of Federal Courts," 2nd ed., 308.

With the class limited to only those whose property has been seized, pursuant to the statute, since this action was instituted, the question immediately arises as to whether its members are too numerous to make joinder practicable. It is unclear exactly how many members are included in the class. This is not a defect which requires this Court to dismiss the class action. As pointed out above, the class is not amorphous, and as such the failure to state the exact number in the class does not preclude the maintenance as a class suit. Dolgow v. Anderson, *supra*; Fischer v. Kletz, 41 F.R.D. 377 (S.D.N.Y.1966).

The plaintiff has shown by affidavit that over the past three years on the average five requests for seizure under the claim and delivery statute have been made of the sheriff each week.[2] This means that in the approximately forty weeks since this action was instituted that about two hundred requests for replevin have been made. Each replevin defendant is a member of this class.

Plaintiff's affidavit further shows that it would be extremely difficult and impractical to identify all of these people. Over 82% of the demands for replevin are never filed in any court in Hennepin County. The only record is a notation in the sheriff's ledger of the demand for replevin. No record is kept of whether actual seizure took place in the cases which are not filed in court.[3] The only way for plaintiff to determine the exact number whose property was actually seized would be for him to contact each person listed in the sheriff's ledger to determine the disposition of his property. This would unquestionably be a burdensome and time-consuming process.

Courts have been cautioned not to be so rigid in applying the numerosity requirement that class actions become a game of numbers; a determination of practicability of joinder should depend upon all of the circumstances surrounding the case. Hansberry v. Lee, 311 U. S. 32, 41, 61 S.Ct. 115, 85 L.Ed. 22 (1940); DeMarco v. Edens, 390 F.2d 836, 845 (2nd Cir. 1968); Gatling v. Butler, 52 F.R.D. 389, 392 (D.Conn. 1971). We feel the circumstances set out above make impractical the joinder of the numerous, unidentified members of this class.

3. *Representation.*

The second broad criterion which must be met in order for a class action to be maintained is that the named plaintiff must be representative of the other members of the class. Wright, *supra*. The drafters of the Federal Rules have manifested this criterion in three separate requirements of Rule 23(a).

The first of these is that there must be common questions of fact and law between the representative and those he seeks to represent. Clearly, there is a common question of law, *i. e.*, whether personal property can be seized pursuant to chapter 565 without violating its possessors' constitutional rights. While the common questions of fact are not quite as apparent, they are nonetheless present. Amici assert that replevin can arise out of any number of different factual situations and as such there are not common questions of fact as required by Rule 23(a). Upon careful examination this contention is seen to be without merit.

A determination of the ultimate right to the property is not the issue here. It makes little difference, in terms of the

---

2. The affidavit of Ann Doyle states that her research shows that there were 841 demands for replevin noted in the sheriff's ledger between January 1, 1968, and March 15, 1971. This is a period of 116 weeks. Ann Doyle Affidavit, p. 2.

3. See Ann Doyle Affidavit at 3, and the Stipulation of the parties, dated August 6, 1971, at 3.

policy of insuring adequate representation, which underlies the rule, whether the factual setting out of which a replevin action arises concerns installment contracts or disputes over ownership. The common question of fact is whether the replevin defendant has been subjected to a summary seizure of his property without prior notice or opportunity to be heard. This question is present in all cases involving seizures under the claim and delivery statute. Plaintiff will be no less representative of the class because his claim did not arise under an installment contract. Such a member of the class would have no different claims or interests than the current representative.

The second Rule 23(a) requirement is that the representative's claim be typical of the other members of the class. This has consistently been held to mean that his claim cannot be antagonistic to the claims of other members. Cannon v. Texas Gulf Sulphur Co., 47 F.R.D. 60, 63 (S.D.N.Y.1969); Mersay v. First Republic Corporation of America, 43 F.R. D. 465, 468 (S.D.N.Y.1968). There can be no serious contention that Thomas' interests are antagonistic to the claims of others in the class. All of their claims are identical; they all seek equitable relief from an allegedly unconstitutional seizure of their property.

Finally, Rule 23(a) requires that the representative adequately represent his class. This merely necessitates an assurance by the representative that he will put up a vigorous fight. Herbst v. Able, 47 F.R.D. 11, 15 (S.D.N.Y.1969);

Dolgow v. Anderson, *supra;* Mersay v. First Republic Corporation, *supra.* Thomas pledges to vigorously prosecute this action, and indeed has done so to date.[4] There is little doubt that this will continue, therefore fulfilling the final requirement of Rule 23(a).

From the above it is clear that the plaintiff will be an adequate representative of his class, and that the class is so numerous that joinder of all members is impracticable. Thus the requirements of Rule 23(a) are met.

In addition to meeting the prerequisites of Rule 23(a), a prospective class action is only maintainable if it falls under one of the requirements of Rule 23(b). This case seems to fall squarely within the ambit of 23(b) (2), which makes provision for a class action when "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole."

This section is supplemental to (b) (1) and (b) (3). Contract Buyers League v. F. & F. Investment, *supra.* It is intended to help cope with situations where individual lawsuits would not produce the untoward effects which (b) (1) and (b) (3) were designed to prevent, but yet a class action is still desirable because of a large number of similar claims for equitable relief.[5] Basically, this subsection was designed for use in the civil rights field, but is not limited to use therein. Advisory Committee Notes, 39 F.R.D. 69, 102.

---

4. See Memorandum in Support of Plaintiff's Request for Injunctive and Declaratory Relief, at 9.

5. The medium of a class action is the only way the members of this class can secure relief absent each of them bringing a suit on his own. A determination that the statute is unconstitutional merely as to Thomas would perhaps prevent future seizures, but it would do nothing for those whose property has been replevied during the past ten months. Even with

the severe excisement of the class by this Court, it still contains 200 people and is growing each week. This is a strong indication of the number of people who are daily being affected by this statute. In a situation like this, it seems the wisest course to make a determination as to the constitutionality of the statute at this point, rather than to wait for a similar plaintiff to make the same arguments in an identical action which will surely soon follow if no decision on the merits is reached here.

The instant case presents exactly the kind of situation this section was intended to handle. There is no possibility of instituting a class action under either of the other subsections of 23(b), yet a class action is the only way in which the members of the class can obtain a determination of a question which is identical for each of them, without each of them bringing a separate suit.

Here the gist of the suit concerns the *action* of the defendant sheriff. He has acted in a way which has *similarly affected* each member of the class, and injunctive and declaratory relief is requested. Thus the class falls within both the letter and spirit of Rule 23(b) (2), and if maintainable at all is maintainable as a class action. Gatling v. Butler, *supra.*

### MOOTNESS

Amici also argue strenuously that the case has been mooted by the settlement of the State court replevin action. Even if settlement of that action has rendered Thomas' claim moot, the claims of the other members of the class are not moot. It is well settled that the mooting of the named representative's claim does not render the whole suit moot. Jenkins v. United Gas Corp., 400 F.2d 28 (5th Cir. 1968); Cypress v. Newport News General & Nonsectarian Hospital Association, 375 F.2d 648 (4th Cir. 1967); Gatling v. Butler, *supra;* Vaughan v. Bower, 313 F.Supp. 37 (D.Ariz.1970), aff'd 400 U.S. 884, 91 S.Ct. 139, 27 L.Ed.2d 129; Gaddis v. Wyman, 304 F.Supp. 713 (S.D.N.Y. 1969); Kelly v. Wyman, 294 F.Supp. 887 (S.D.N.Y.1968).

Likewise, it is not valid to say that because the case has become moot as to Thomas that he is no longer a member of the class, and as such he "cannot represent a class of whom [he is] not a part." Bailey v. Patterson, 369 U.S. 31, 32–33, 82 S.Ct. 549, 550, 7 L.Ed.2d 512 (1962). Thomas was clearly a proper representative when the action was commenced, since he was a member of the class at that time. So long as he was a member at the beginning, mooting of the case as to him does not affect his ability to continue as the representative. Gatling v. Butler, *supra.*

We therefore decide that a proper class has been defined and order that the action may proceed as a class action.